IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEANNE BAUGH,<br><br>  Plaintiff<br><br>v.<br><br>ROBERT MORRIS UNIVERSITY,<br><br>  Defendant | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

AND NOW, Plaintiff **Jeanne Baugh, Ph.D. ("Baugh")** by and through Attorney Martell Harris files this Complaint against **Robert Morris University ("Defendant")** alleging the following:

### I. Nature of the Action

1. This is an action for equitable relief as well as monetary damages, to redress Defendant's unlawful sex discrimination and retaliation against Ms. Baugh in violation of the Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA") 43. P. S. § 951 et. Seq.

### II. Jurisdiction and Venue

2. This Court has jurisdiction under § 1331 pursuant to **Title VII of the Civil Rights Act of 1964.** This action involves federal questions regarding the violation of Plaintiff's rights protected by the **Title VII.** The events or omissions giving rise to the claims occurred in **Allegheny County, Pennsylvania,** and therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania, and such Court situated in Pittsburgh is the proper venue for this action.

### III. Parties

3.     Plaintiff Jeanne Baugh ("**Baugh**") is an individual resident who currently resides in Fayette County, Pennsylvania at 2827 National Pike, Chalk Hill, PA 15421, and was a resident and citizen of Pennsylvania at all times relevant to this case.

4.     Defendant Robert Morris University ("**Defendant**") is an entity with an address at 6001 University Boulevard, Moon Township, PA 15108.

### IV. Facts of the Case

5.     Within the statute of limitations, Baugh filed a Charge of Discrimination with the EEOC and the PHRC and she has received a right to sue letter from the EEOC.

6.     Baugh was promoted in 2013 to the rank University Professor in the Computer and Information Systems (CIS) department.

7.     Baugh was the only female university professor in the department.

8. In August 2013 the CIS department head, John Turchek, unilaterally changed the curriculum for the graduate level Java course that Baugh had been teaching for the previous nine years without consulting her as required under her contract with Defendant.

9. Baugh's course was reassigned to a less qualified male, Dr. Laverty.

10.     The curriculum changes made by Mr. Turchek accompanied the creation of a new Enterprise/Mainframe program, for which he invited five male faculty from the department to teach but invited no women.

11.     Baugh brought these issues to the attention of Mr. Turchek as well as Associate Dean Wood and Dean Levine, but none of them provided any assistance in this matter.

12. After being ignored by the department head and the university administration, Baugh drafted a grievance and showed it to Walt Pilof, a faculty member, regarding the discriminatory way in which the Java course had been assigned during the Fall 2013 semester.

13. On September 12, 2013, the Java course appeared in Baugh's base load for the upcoming Spring 2014 semester. Later that day, after Mr. Pilof showed a draft of the grievance he had received from Baugh to Mr. Turchek and the Java course was suddenly removed from Baugh's Spring 2014 schedule and added to Dr. Laverty's base load.

14. On September 23, 2013, Baugh filed the grievance, which went all the way through a step three proceeding in January, 2014 before a neutral party noted "irregular" course assignments as related to Baugh.

15. On March 4, 2014, Mr. Turchek assigned Dr. Laverty the right of first refusal for the Java course.

16. On March 4, 2014, again, Baugh informed the administration of Mr. Turchek's discriminatory behavior due to the fact that he assigned the right of first refusal to Dr. Laverty.

17. One week later, Mr. Turchek changed her schedule, from two days per week to three days per week. Baugh had worked the same two-day schedule for twenty-six semesters since she had been hired.  Mr. Turcheck made a point to check on Baugh's class each Friday, which was not done to other male professors.  The new time resulted in inadequate lab time for her course since courses only have one lab day each week and classes become shorter on a three-day schedule.  This change created a substantial risk to her performance.

18. Baugh again sought help from the administration but was refused.

19. During the spring 2014 semester, Mr. Turchek's treatment of Baugh worsened. Mr. Turchek yelled at Baugh in multiple meetings in front of their colleagues.

20.     Several female colleagues of Baugh were afraid to go against Mr. Turchek in fear of losing the courses they specialize in.

21.     Other colleagues of Baugh were afraid of working with her in case Mr. Turchek targeted them for retaliation as well.

22.     Dr. Gary Davis wanted to begin some training with Baugh, but told her that "Turchek will not approve training funds for us if he knows it is for you also."

23.     Associate Dean Wood told Baugh that if she had any ideas to make the department better, she should tell him because "Turchek would not accept them from you" and that "Turchek is a bully to the females."

24.     On June 12, 2014, Baugh had requested to instruct the ethics course that was due to start the following week. Originally the course was assigned to Dr. Fred Kohun, but was reassigned to Burcik, a male adjunct from Slovakia. When Dr. Kohun resigned from the course, it should have been made available for Baugh to bid on as required by the Union contract.

25.     Baugh sent an email to Mr. Turchek requesting the ethics course.

26.     Instead of the course being made available for Baugh to bid on, it was reassigned to Dr. Kohun, but the course was actually taught by Burcik.

27.     On August 1, 2014, Baugh filed a second grievance concerning the right of refusal on Java and a third grievance concerning the summer ethics course assignment.

28.     On September 8, 2014, Danielle Uselman, Director of Human Resources, stated that Mr. Turchek was not permitted at the grievance meeting because he had an "anger problem" and that they "Did not think it would be a good idea for him to be there."

29. On September 23, 2014, Dr. Wood informed Baugh that he was "insulted" by the grievance, which was "laughable." Mr. Truchek took the opportunity to scream at Baugh during this meeting as well.

30. Associate Dean Wood once again sided with Mr. Turchek regarding her grievance and accused Baugh of lying about not being assigned the ethics course.

31. As the Fall 2014 semester progressed, Baugh was treated badly by Mr. Turchek at CIS department meetings. When Baugh had asked Mr. Turchek about a failing program, he showed absolute contempt towards her, saying that she was "Beating a dead horse."

32. At a CIS department meeting on January 21, 2015 Baugh was ganged up on by her male colleagues when she asked for numbers on a failing program. Mr. Turchek had promised enrollment numbers on all programs in the department, but the list he provided left the failing Enterprise/Mainframe off the list. Dr. Woods said to "shut the girl up."

33. After respectfully asking the men in the meeting for the numbers, Associate Dean Wood stated angrily that Baugh was "waging a personal attack against Turchek" and "No one will tell me differently." Dr. Laverty joined in and attacked Baugh as well

34. Baugh reported this incident to Mr. Jamison, who acknowledged that Turchek, Wood and Laverty had ganged up on her at the meeting. Baugh also reported the incident to the Title IV office and the Human Resources Department.

35. In April 2015, Baugh noticed that the Java course had been assigned by Mr. Turchek to a fictitious person. This would prevent the course from showing up on the overload list for Fall 2015. This was another attempt by Mr. Turchek to prevent Baugh from teaching the course.

36. Mr. Turchek has also pushed the department to hire another programmer, giving Mr. Turchek further opportunities to prevent Baugh from instructing the courses in which she specializes.

37. During a department meeting in December 2015, Baugh's ideas were viciously and unfairly attacked, prompting Dr. Kovacs and Dr. Wu to defend Baugh against Mr. Wood's ad Dr. Laverty's unprofessional and demeaning behavior. Turcheck refused to consider Baugh's future ideas.

38. Mr. Truchek attempted to deny Baugh the opportunity to serve on promotion committees, and only relented when a male colleague pointed to the specific contract language giving Baugh the unlimited right to do so.

39. Baugh, the department's only woman, was the only person questioned about committee reports.

40. Dr. Wood informed Baugh that she was required to attend all future committee meetings in person, though the contract does not require attendance to the meetings at all.

41. In January of 2016, Associate Dean Wood had told Doctoral students that "three women teaching the program at one time the perfect storm."

## COUNT I

### Sex Discrimination in Violation of Title VII

42. All preceding paragraphs are hereby incorporated.

43. Baugh is a statutory employee under the Title VII of the Civil Rights Act.

44. Defendant is a statutory employer under the Title VII of the Civil Rights Act.

45. Baugh was qualified to perform the duties of her position, for which sex is not a bona-fide occupational qualification. (1) Baugh has the requisite educational background; (2)

Baugh has the requisite professional experience; (3) Baugh has taught the course at issue for over a decade without issue, and; (5) Baugh was asked to teach the courses at other universities, based on her body of work and experience.

46. Baugh suffered adverse employment actions in the following way: (1) Baugh was treated differently than her male colleague's and not given the same opportunities when her course was re-assigned to a less qualified male; (2) Mr. Truchek's assignment of right of first refusal, preventing Baugh from re-gaining her work for at least three years, and; (3) Mr. Trucheck's assignment of a course he knew Baugh desired to a ficticious person, preventing the course from being made available to her.

47. Defendant's adverse employment actions grant an inference of sex discrimination in the following ways: (1) Baugh had a course she had taught for nine years taken from her and it was assigned to a male colleague; (2) Baugh was not invited to teach in the new Enterprise/mainframe program, yet five male faculty members were; (3) A male colleague was purposely assigned the right of first refusal for the course that Baugh had taught for nine years, which meant for three years she would be denied the opportunity to teach the course;(4) Baugh requested to teach an ethics course in June 2014 and was denied. The course was given to a male colleague; (5) Baugh was ganged up on by her male colleagues when she asked questions about the Enterprise/Mainframe program, and; (6) Numerous comments were made against women as more fully detailed above.

## COUNT II

### Sex Discrimination in Violation of the PHRA

48. All preceding paragraphs are hereby incorporated.

49. Baugh is a statutory employee under the Pennsylvania Human Relations Act.

50.     Defendant is a statutory employer under the Pennsylvania Human Relations Act.

51.     Baugh was qualified to perform the duties of her position, for which sex is not a bona-fide occupational qualification.  (1) Baugh has the requisite educational background; (2) Baugh has the requisite professional experience; (3) Baugh has taught the course at issue for over a decade without issue, and; (5) Baugh was asked to teach the courses at other universities, based on her body of work and experience.

52.     Baugh suffered adverse employment actions in the following way: (1) Baugh was treated differently than her male colleague's and not given the same opportunities when her course was re-assigned to a less qualified male; (2) Mr. Truchek's assignment of right of first refusal, preventing Baugh from re-gaining her work for at least three years, and; (3) Mr. Trucheck's assignment of a course he knew Baugh desired to a ficticious person, preventing the course from being made available to her.

53.     Defendant's adverse employment actions grant an inference of sex discrimination in the following ways: (1) Baugh had a course she had taught for nine years taken from her and it was assigned to a male colleague; (2) Baugh was not invited to teach in the new Enterprise/mainframe program, yet five male faculty members were; (3) A male colleague was purposely assigned the right of first refusal for the course that Baugh had taught for nine years, which meant for three years she would be denied the opportunity to teach the course;(4) Baugh requested to teach an ethics course in June 2014 and was denied. The course was given to a male colleague; (5) Baugh was ganged up on by her male colleagues when she asked questions about the Enterprise/Mainframe program, and; (6) Numerous comments were made against women as more fully detailed above.

## COUNT III

**Retaliation in Violation of Title VII**

54. All preceding paragraphs are hereby incorporated.

55. Each time Baugh complained about her treatment which she perceived to be discriminatory, or engaged the grievance process as more fully described above, she engaged in protected activity.

56. Specifically, Baugh wrote and shared, then filed a grievance against Mr. Truchek for perceived sex discrimination due to her losing her class, thus engaged in a protected activity.

57. The same day Mr. Trucheck became aware of Baugh's activity, her course suddenly became unavailable, thus the temporal proximity of the course removal grants an inference of discrimination. Additionally, Mr. Truchek granted a male professor right of first refusal to Baugh's course.

58. Baugh again wrote and filed a grievance for perceived sex discrimination due to Mr. Trucheck's grant of right of first refusal, thus engaged in a protected activity.

59. The next week, Baugh's schedule was changed to three days a week, which is insufficient to properly instruct the course, thus the temporal proximity of the schedule change grants an inference of discrimination.

60. Following both these protected activities, Mr. Truchek and his other male colleagues mistreated Baugh in meetings, and purposefully kept pertinent information from her, and made comments demeaning to women. The nature of the comments, and generally rude nature of their mistreatment grants an inference of discrimination and/or retaliation against Baugh.

## COUNT IV

**Retaliation in Violation of the PHRA**

61. All preceding paragraphs are hereby incorporated.

62. Each time Baugh complained about her treatment which she perceived to be discriminatory, or engaged the grievance process as more fully described above, she engaged in protected activity.

63. Specifically, Baugh wrote and shared, then filed a grievance against Mr. Truchek for perceived sex discrimination due to her losing her class, thus engaged in a protected activity.

64. The same day Mr. Trucheck became aware of Baugh's activity, her course suddenly became unavailable, thus the temporal proximity of the course removal grants an inference of discrimination. Additionally, Mr. Truchek granted a male professor right of first refusal to Baugh's course.

65. Baugh again wrote and filed a grievance for perceived sex discrimination due to Mr. Trucheck's grant of right of first refusal, thus engaged in a protected activity.

66. The next week, Baugh's schedule was changed to three days a week, which is insufficient to properly instruct the course, thus the temporal proximity of the schedule change grants an inference of discrimination.

67. Following both these protected activities, Mr. Truchek and his other male colleagues mistreated Baugh in meetings, and purposefully kept pertinent information from her, and made comments demeaning to women. The nature of the comments, and generally rude nature of their mistreatment grants an inference of discrimination and/or retaliation against Baugh.

## COUNT V

### Hostile Work Environment in Violation of Title VII

68. All preceding paragraphs are hereby incorporated.

69. Baugh was subjected to harassing conduct.

70. The harassing conduct to which Baugh was subjected was severe and pervasive.

71. Defendant was aware that the harassment was taking place.

72. Defendant failed to take prompt action to cure this behavior.

73. Defendant's and its agents participated in the harassing conduct such as: (1) Mr. Turchek would deny the opportunity to teach classes she is well qualified to teach and instead assign the classes to less qualified male colleagues; (2) Mr. Turchek yelled at Baugh in multiple meetings in front of their colleagues; (3) Baugh had been ganged up on by her male colleagues when she asked for numbers on a failing program; (4) In January of 2016, Associate Dean Wood had told Doctoral students that "three women teaching the program at one time the perfect storm," meaning that having all women teaching would be somehow problematic for the University.

74. The harassing conduct to which Baugh was subjected resulted in a hostile work environment in violation of the Title VII of the Civil Rights Act of 1964.

75. Due to the hostility towards Baugh, a number of academics and professionals refused to collaborate with Baugh, because, according to Dr. Gary Davis, "Turchek will not approve training funds for us if he knows they are for you also."

76. Due to the hostility towards Baugh, a number of academics and professionals expressed "sorrow" in regards to her having to deal with the hostile environment. She also received accolades form other female staff members for her "bravery" in standing up to Mr. Turchek's attitudes towards women.

77. Baugh no longer attends committee meetings because of her fear of facing Dr. Turchek and Dr. Woods.

## COUNT VI

### Hostile Work Environment in Violation of the PHRA

78. All preceding paragraphs are hereby incorporated.

79. Baugh was subjected to harassing conduct.

80. The harassing conduct to which Baugh was subjected was severe and pervasive.

81. Defendant was aware that the harassment was taking place.

82. Defendant failed to take prompt action to cure this behavior.

83. Defendant's and its agents participated in the harassing conduct such as: (1) Mr. Turchek would deny the opportunity to teach classes she is well qualified to teach and instead assign the classes to less qualified male colleagues; (2) Mr. Turchek yelled at Baugh in multiple meetings in front of their colleagues; (3) Baugh had been ganged up on by her male colleagues when she asked for numbers on a failing program; (4) In January of 2016, Associate Dean Wood had told Doctoral students that "three women teaching the program at one time the perfect storm," meaning that having all women teaching would be somehow problematic for the University.

84. The harassing conduct to which Baugh was subjected resulted in a hostile work environment in violation of the Pennsylvania Human Relations Act.

85. Due to the hostility towards Baugh, a number of academics and professionals refused to collaborate with Baugh, because, according to Dr. Gary Davis, "Turchek will not approve training funds for us if he knows they are for you also."

86. Due to the hostility towards Baugh, a number of academics and professionals expressed "sorrow" in regards to her having to deal with the hostile environment. She also

received accolades form other female staff members for her "bravery" in standing up to Mr. Turchek's attitudes towards women.

87. Baugh no longer attends committee meetings because of her fear of facing Dr. Turchek and Dr. Woods.

## Request for Relief

WHEREFORE, Plaintiff respectfully requests for this Court to grant the following relief:

a. Award Plaintiff back pay, if appropriate;

b. Award Plaintiff front pay, if appropriate;

c. Award Plaintiff punitive damages, pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

d. Award Plaintiff compensatory damages for lost wages, benefits, interest, and other remuneration, and for embarrassment, humiliation, emotional distress, and damage to reputation as well as punitive damages.

e. Such equitable relief as may be appropriate under the circumstances; and

f. Award such further relief as this Court deems necessary and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,
/s/Martell Harris

Martell Harris, Esquire
Pa. Id. No. 319504
*Attorney for Jeanne Baugh, Ph.D.*

**KRAEMER, MANES & ASSOCIATES, LLC**
U.S. Steel Tower
600 Grant Street, Suite 660

Pittsburgh, PA 15219<br>
411.626.5585 (p)<br>
412.637.0231 (f)<br>
mh@lawkm.com